IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Stacy B, <br><br> Plaintiff, <br> v. <br><br> Nancy A. Berryhill, Acting Commissioner of Social Security <br><br> Defendant. | Memorandum Decision and Order Reversing and Remanding the Decision of the Commissioner <br><br><br> Case No. 2:18-cv-140 BCW <br><br><br> Magistrate Judge Brooke Wells |

Plaintiff, Stacy B, appeals from the denial of her application for disability benefits.[1] The underlying case was decided at step four of the five-step evaluation process.[2] Upon review, the court determines the Commissioner did not apply the correct legal standards and her decision is not supported by substantial evidence. Accordingly, the court reverses and remands for further proceedings.

Ms. B[3] filed for benefits in January 2014, alleging disability due to copper deficiency, confusion, anemia, malnutrition and unsteady on feet.[4] After a hearing, an administrative law judge (ALJ) concluded at step four of the five-step evaluation process,[5] that Ms. B could perform her past relevant work as a call order taker.[6] Plaintiff argues on appeal that the ALJ erred by: (1)

---

[1] The parties consented to the jurisdiction of the undersigned in accordance with 28 U.S.C. § 636(c).
[2] *See generally* Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988).
[3] Based on privacy concerns regarding sensitive personal information the court does not use Plaintiff's last name. Privacy concerns are a part of many of the Federal Rules. *See* Fed. R. App. P. 25(a)(5); Fed. R. Civ. P. 5.2; Fed. R. Crim. P. 49.1.
[4] Tr. 65. (Tr. refers to the transcript of the record).
[5] *See* 20 C.F.R. 404.1520.
[6] Tr. 27.

failing to properly evaluate the severity of her impairments; and (2) by failing to properly evaluate the opinion of her treating physicians.[7]

The ALJ found that Ms. B. had the residual functional capacity to perform light work as set forth in 20 C.F.R. 404.1567(b) with some additional limitations.[8] In making this finding the ALJ previously rejected Claimant's alleged fatigue as a severe impairment at step two. In support of this finding, the ALJ stated "her physician noted that the claimant's problems with daytime somnolence and fatigue had resolved since she started taking the proper dosage of Provigil, and the claimant stated that the Provigil made a 'huge difference in her ability to function during the day.'"[9] The report cited to by the ALJ, however, does not support the ALJ's finding that the fatigue had "resolved." Rather, the report provides that "[e]ven though the patient is compliant with CPAP therapy she continues to have problems with daytime somnolence and fatigue."[10] The report then cites to Claimant's test score of 18/24 on the Epworth sleepiness scale indicating severe daytime sleepiness.[11] The ALJ did not discuss this probative evidence in the report that weighs against the ultimate finding of not disabled.

---

[7] The court reviews the Commissioner's "decision only to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence in the record." *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir.2006). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir.2008) (internal quotation marks omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004); *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Thus, the court may not "'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Custer County Action Ass'n v. Garvery*, 256 F.3d 1024, 1030 (10th Cir. 2001)).
[8] These limitations included "occasionally lift and/or carry 15 pounds and frequently lift and/or carry 10 pounds; frequently handle, finger, and feel bilaterally; perform occasional postural; stand and/or walk for 2 to 3 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; and no climbing ladders, ropes or scaffolds." Tr. 21.
[9] Tr. 18.
[10] Tr. 1522.
[11] The Epworth Sleepiness Scale is a test designed to assess the daytime sleepiness of patients. *See* http://epworthsleepinessscale.com/about-the-ess/ (last accessed January 14, 2019).

The government acknowledges the ALJ "may have misread the meaning of 'resolved' within the treatment note."[12] However, the ultimate conclusion that Plaintiff's ability to function was significantly improved with Provigil was correct. The court agrees with the government that the ALJ's conclusion about Provigil was correct. Plaintiff did improve with Provigil. Generally, a step two error argument, as made by Plaintiff in this case, fails because the "failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe."[13] Here, the ALJ found Plaintiff had other severe impairments including: "copper and zinc deficiency, lumbar degenerative disc disease, bilateral hand and knee arthritis and joint degeneration, right shoulder arthritis and joint degeneration, [and] bilateral lower extremity neuropathy."[14] But, the concern here is not simply with the failure of the ALJ to find fatigue as a severe impairment at step two. The concern lies in the proper evaluation of the medical evidence. The ALJ's initial error in regard to fatigue is repeated in other parts of the analysis.

The ALJ discussed the opinions of Dr. Doug Callahan, Dr. John McCormick and Dr. Max Root, all treating physicians, and Mark Udy, who was Claimant's treating physician assistant. In rejecting each of the medical opinions of these providers the ALJ gave the same repeated reason:

> Little weight is given to these opinions as they are all generally inconsistent with the evidence of record as a whole, inconsistent with the claimant's 2016 lumbar MRI scan findings of no significant lumbar disc or facet degeneration and inconsistent with her normal physical examination and blood test findings in November and December 2015 (Exhibits 25F/11, 27F/2, 30F/21, 40 and 36F/17, 22).[15]

---

[12] Answer brief p. 10.
[13] *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir.2016).
[14] Tr. 17.
[15] Tr. 26.

A review of the cited support in the record, however, does not bolster the ALJ's decision as much as the government would have the court believe. For example, 36 F/17 provides that Claimant struggles with anxiety "nearly every day."[16] 36F/22 relates to an appointment for diarrhea and an urinary tract infection, not lumbar disc or facet degeneration. In similar fashion, 25F/11 dealt with diarrhea and abdominal pain where a colonoscopy and a stool test for C.Diff. were recommended. Exhibit 20F/21 and 40, report blood tests concerning copper and other elements such as red blood cell count, protein and vitamin B6. In short, the cited exhibits do not support the boilerplate rejection of these medical opinions.

In *Haga v. Astrue*,[17] the Tenth Circuit held that reversible error existed because the administrative law judge violated Tenth Circuit precedent requiring an ALJ to explain why he had rejected some of the physician's uncontroverted findings, while implicitly adopting others. In reviewing a claim for social security benefits an ALJ must consider all the evidence, but need not discuss all of the evidence.[18] However, an ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."[19] Here, the ALJ simply cited to the same language in rejecting multiple medical opinions from treating physicians. As noted by the Tenth Circuit, there is an inherent risk in boilerplate language of difficulty in determining the specific evidence that leads to an ALJ's decision.[20] The court finds this case analogous to *Haga*, because the ALJ failed to adequately explain certain findings while rejecting others. Further, the supposed support for the ALJ's repeated boilerplate rejections of

---

[16] Tr. 1674.
[17] 482 F.3d 1205, 1207-08 (10th Cir.2007).
[18] *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir.1996).
[19] *Id.* at 1010; *see also Zblewski v. Schweiker,* 732 F.2d 75, 79 (7th Cir.1984) ("a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position").
[20] *See Hardman v. Barnhart*, 362 F.3d 676, 679-80 (10th Cir.2004).

medical opinions is lacking. Thus, the court agrees with Plaintiff that the ALJ erred by failing to properly evaluate the opinions of her treating physicians.

## CONCLUSION AND ORDER

The ALJ did not apply the correct legal standards and the decision is not supported by substantial evidence. The court, therefore, concludes the Commissioner's decision is not free of harmful legal error. The decision is reversed and remanded for further consideration in accordance with the court's decision. The Clerk of the Court is instructed to close this case.

DATED this 15 January 2019.

_____
Brooke C. Wells
United States Magistrate Judge